UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOMIE GEAR, INC.,<br><br>                              Plaintiff,<br><br>v.<br><br>LANCEBERG HOLDINGS, LLC,<br><br>                              Defendant. | Case No.:  16cv1062 BTM (DHB)<br><br>**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS** |

On May 2, 2016, Plaintiff Homie Gear, Inc., filed a Complaint against Defendant Lanceberg Holdings, LLC. (ECF No. 1.) Defendant filed a motion to dismiss on June 17, 2016. (ECF No. 7.) For the reasons discussed below, Defendant's motion is **DENIED in part** and **GRANTED in part**.

## I. BACKGROUND

Plaintiff Homie Gear is a California corporation that sells various products, including: footwear, t-shirts, pants, jeans, and clothing accessories. (Compl. ¶ 7.) Plaintiff sells its products under various brands that are protected through registered trademarks. (Compl. ¶ 8.) In November 2014 Plaintiff sought to register

the mark "Swiss Wear" in international classes 18 and 25.[1] (Compl. ¶¶ 10-11.) Plaintiff allegedly intends to the use the "Swiss Wear" mark in connection with, <u>inter alia</u>, backpacks, wallets, clothing, and clothing accessories. (Compl. ¶¶ 10-11.)

Defendant Lanceberg Holdings, LLC, is a California company that, in June 2015, filed an application seeking to register the "Alpine Swiss" mark, also in international classes 18 and 25. (Compl. ¶ 12.) Defendant allegedly has sold briefcases, wallets, footwear, and clothing bearing the "Alpine Swiss" mark since September 2011. (Mot. to Dismiss, ECF No. 7-1, p. 1.) On August 12, 2015, Defendant's counsel sent Plaintiff a cease and desist letter requesting that Plaintiff discontinue using its "confusingly similar" trademarks. (<u>See</u> Cease and Desist Letter (hereinafter "C&D Letter"), attached to Compl. as Ex. 6.) In September 2015 Defendant also filed a Notice of Opposition in the proceedings before the United States Patent and Trademark Office ("USPTO") related to Plaintiff's trademark applications, alleging likelihood of confusion and trademark dilution. Defendant filed an amended Notice of Opposition in February 2016 allegedly removing the dilution claims. (Compl. ¶ 17.)

Defendant also filed three additional trademark applications in October 2015. (Compl. ¶ 18.) Plaintiff filed a Notice of Opposition in the proceedings related to Defendant's June 2015 trademark applications, and allegedly intends to file an additional Notice of Opposition in the proceedings related to Defendant's October 2015 trademark applications. (Compl. ¶ 19.)

Plaintiff brings this action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, seeking declaratory judgment of no trademark infringement,

//

---

[1] Pursuant to 37 C.F.R. § 6.1, class 18 refers to leather, imitations of leather, trunk, and traveling bags, and class 25 refers to clothing, footwear, and headgear.

no trademark dilution, no federal unfair competition, and the right to use and register a trademark with the word "Swiss." Defendant moves to dismiss.

## II. DISCUSSION

Defendant argues that the Court lacks subject matter jurisdiction because no actual case or controversy exists. In the alternative, Defendant argues that even if subject matter jurisdiction exists, the Court cannot determine whether Plaintiff can register its marks. Finally, Defendant argues that the Court should decline jurisdiction under its discretion. Each argument is discussed in turn.

**A.  Subject Matter Jurisdiction**

   *1.  Legal Framework*

Plaintiff asserts federal question jurisdiction under 28 U.S.C. § 1331, arguing that the claims arise under the Declaratory Judgment Act ("DJA"). The DJA provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court . . . may declare the rights and other legal relation of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The DJA does not create an independent basis for jurisdiction, and the party seeking relief must establish an independent basis for jurisdiction. See Tradebay, LLC v. eBay, Inc., 278 F.R.D. 597, 604 (D. Nev. 2011) (citing Aetna Life Insurance Co. v. Haworth, 300 U.S. 227 (1937)).

The DJA "actual controversy" requirement "is operative only in respect to controversies which are such in the constitutional sense." Aetna, 300 U.S. at 240. Accordingly, Article III of the Constitution limits the subject matter jurisdiction of the federal courts to "cases" or "controversies." U.S. Cons. Art. III. Thus, the Court has subject matter jurisdiction over Plaintiff's DJA claims if the claims meet the case or controversy requirement of Article III. See also Rhoades v. Avon Prods., Inc., 504 F.3d 1151, 1157 (9th Cir. 2007) (stating that when analyzing a declaratory judgment claim for subject matter jurisdiction, "federal courts must take care to

ensure the presence of an actual case or controversy, such that the judgment does not become an unconstitutional advisory opinion").

Accordingly, an actual case or controversy exists when, "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (internal quotation omitted). In MedImmune, the Supreme Court discussed the applicability of the DJA to a patent infringement case.[2] Id. The Court held that a patent license holder was not required to actually breach its license agreement in order to attack the validity of the underlying patent prior to seeking declaratory relief. Id. at 137.[3]

Before MedImmune, Ninth Circuit precedent required a plaintiff in a trademark case to demonstrate a "real and reasonable apprehension that [it] will be subject to liability." Cheesebrough-Pond's, Inc. v. Faberge, Inc., 666 F.2d 393, 396 (9th Cir. 1982). The "real and reasonable apprehension" test in the Ninth Circuit continues after MedImmune as "one of multiple ways that a declaratory judgment plaintiff can satisfy the more general all-the-circumstances test to establish that and action presents a justiciable Article III controversy." Prasco, LLC v. Medics Pharmaceutical Corp., 537 F.3d 1329, 1336 (Fed. Cir. 2008).

//

---

[2] Although MedImmune involved a patent case, "[t]he rule applied to declaratory judgment issues in patent disputes has traditionally carried over to be applied in trademark cases." 6 J Thomas McCarthy, Trademarks and Unfair Competition § 32:51.50.

[3] Prior to MedImmune, the Federal Circuit applied a "reasonable apprehension of imminent suit" test to establish an actual controversy in DJA cases. See Teva Pharmaceuticals USA, Inc. v. Pfizer, Inc., 395 F.3d 1324, 1333 (9th Cir. 2005). The Supreme Court expressly rejected the "reasonable apprehension" test in Teva, holding instead that courts should consider whether "all the circumstances" established an actual controversy. MedImmune, 549 U.S. at 127, n.11; see also SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1380 (9th Cir. 2007) ("The Supreme Court's opinion in MedImmune represents a rejection of our reasonable apprehension of suit test.").

### 2. *Defendant's Actions*

Plaintiff argues that jurisdiction is proper because of the opposition proceedings pending before the Trademark Trial and Appeal Board ("TTAB"), as well as the C&D Letter that outlined the alleged infringing activity. Defendant maintains that its conduct following the C&D Letter should have dispelled any apprehension of litigation, and therefore no substantial controversy exists at this time. The Court agrees with the Plaintiff and concludes that the combination of TTAB opposition proceedings, as well as the C&D Letter, adequately establishes an actual controversy sufficient to satisfy Article III's jurisdictional requirement.

In Cheesebrough, the leading Ninth Circuit case relating to declaratory relief in trademark infringement cases, the court determined that the plaintiff reasonably inferred a threat of litigation from a defendant's letter that stated an intent to file opposition proceedings, stated a prima facie case for trademark infringement, and alleged that the use of plaintiff's mark was likely to cause confusion. Cheesebrough, 666 F.2d at 396-97. The court instructed that, "the acts of the defendant [are] . . . to be examined in view of their likely impact on competition and the risks imposed upon the plaintiff, to determine if the threat perceived by the plaintiff [is] real and reasonable. Id. at 396.

Following Chessebrough, district courts have consistently held that a combination of TTAB opposition proceedings and infringement-alleging language in cease and desist letters establishes the existence of an actual controversy sufficient for subject matter jurisdiction. See, e.g., FN Cellars, LLC v. Union Wine Co., No. 15cv2301 JD, 2015 WL 5138173 (N.D. Cal. Sept. 11, 2015) (holding that a letter laying out the elements of an infringement action and the filing of a cancellation proceeding before the TTAB satisfied the actual controversy requirement); Neilmed Prods., Inc. v. Med-Systems Inc., 472 F. Supp. 2d 1178, 1180-82 (N.D. Cal. 2007) (finding that a defendant's notice of opposition that laid

//

out infringement claims satisfied the actual controversy requirement because such actions could give a plaintiff a reasonable apprehension of liability).

In this case, Defendant sent Plaintiff a cease and desist letter that outlined the elements of its trademark infringement claims. (See C&D Letter.) Moreover, Defendant has filed opposition proceedings before the TTAB. Viewing these acts as they pertain to the risk imposed on the Plaintiff, the Court finds that Plaintiff had a real and reasonable apprehension of suit at the time it filed the instant action.

Defendant notes that, following Plaintiff's threat to file a DJA action in federal court, Defendant sent Plaintiff a letter allegedly dispelling any intention to file an infringement suit. (See Ex. F, ECF No. 8-6.) Defendant relies on Lenz v. Universal Music Corp., No. C 7-3783 JF, 2008 WL 962102 (N.D. Cal. Apr. 8, 2008) and similar cases for the proposition that Defendant's letter precludes the Court from finding that an actual case or controversy exists. In Lenz, the plaintiff had uploaded a video to YouTube of her toddler dancing to a song by Prince. Id. at *1. The defendant, which owned the rights to the Prince song, sent a takedown notice to YouTube because of an alleged copyright violation. Id. After the plaintiff sent a counter-notification demanding that her video be reposted because it did not infringe, the video reappeared. Id. The court in Lenz held that because the video had been reposted, because the takedown notice was sent to YouTube and not the plaintiff, and because the defendant never intended to assert an infringement action against the plaintiff directly, the court lacked subject matter jurisdiction. Id. at *5.

Unlike the defendant in Lenz that never contacted the plaintiff directly about the alleged infringement, Defendant here stated in a cease and desist letter that Plaintiff was infringing on Defendant's marks, and that if Plaintiff did not stop, Defendant "may file a lawsuit . . . in federal court for trademark infringement." (C&D Letter 2.) Defendant also actively opposed the registration proceedings before the

//

1  TTAB. Defendant's attempts to rely on a letter that allegedly dispels any intent to
2  sue are unavailing because the letter was sent after Plaintiff threatened to file a
3  declaratory relief action. Defendant relies too heavily on its letter that was sent
4  when Plaintiff threatened litigation. Instead, all the circumstances leading up to the
5  filing of the Complaint created a real and reasonable apprehension of suit.

6      Accordingly, Defendant's motion to dismiss for lack of subject matter
7  jurisdiction is **DENIED**.[4]

## B. Plaintiff's Fourth Claim: Right to Use and Register a Mark

    Plaintiff's fourth cause of action seeks a judicial declaration that registration of Defendant's marks does not entitle Defendant to exclusive use and registration of any mark containing the word "Swiss." (Compl. ¶ 63.) Defendant argues that federal courts lack jurisdiction to decide whether or not a mark can be registered.

    To the extent Plaintiff's claim asks the Court to declare Defendant's right to register a mark, the Court only has appellate jurisdiction. See 15 U.S.C. § 1071(b) (following a decision on an application for registration with the USPTO, "[t]he court may adjudge that an application is entitled to registration . . . , that a registration involved should be canceled, or such other matter as the issues in the proceeding require . . . ."); Merrick v. Sharp & Dohme, Inc., 185 F.2d 713 (7th Cir. 1950) ("[C]ourts of the United States have no jurisdiction over registration proceeding except that appellate jurisdiction given them by the Trade-Mark Act."); Realty Experts Inc. v. RE Realty Experts, Inc., No. 11cv1546 JLS, 2012 WL 699512, at *4 (S.D. Cal. Mar. 1, 2012) (noting that the PTO is better equipped to handle the initial determination of trademark registration, and holding that declaratory relief

---

[4] On November 4, 2016, Plaintiff filed a notice of related case under Civil Local Rule 40.1(f) noting that an allegedly related licensee of Defendant filed a lawsuit in Los Angeles Superior Court against the Plaintiff here. That case does not allege trademark infringement. Rather, it alleges interference and unfair competition claims under state law. The fact of the filing of this case is not dispositive of the standing issue, but it certainly increases Plaintiff's apprehension of a trademark infringement suit.

would not resolve any potential dispute of infringement).

To the extent Plaintiff's claim asks the Court to declare whether Plaintiff is precluded from using the word "Swiss" in association with its alleged marks because they are likely to cause confusion with Defendant's marks, the Court has jurisdiction because, as discussed above, an actual controversy exists between the parties.[5]

### C.   Discretionary Jurisdiction

Defendant characterizes the actual controversy in this case as "whether or not [the parties] respective marks can be registered with the USPTO," and requests that the Court decline to exercise jurisdiction.

In general, declaratory relief is available at the discretion of the court, and in the trademark context, "[e]xercise of that discretion will allow rejection of cases that are properly before the Patent and Trademark Office." Cheesebrough, 666 F.2d at 396; see also 28 U.S.C. § 2201 ("In a case of actual controversy . . . any Court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration . . . .") (emphasis added). As discussed above, Plaintiff's claims arise from an actual controversy properly within the Court's jurisdiction. Moreover, Defendant's state in their opposition that the proceedings before the USPTO have been suspended pending resolution of the instant action.

Because an actual controversy exists in this case, and because all other related proceedings have been stayed, the Court **DENIES** Defendant's request that the Court decline to exercise its jurisdiction.

Accordingly, Defendant's motion to dismiss is **DENIED without prejudice**

---

[5] Neither the Complaint nor the briefing corresponding to Defendant's motion to dismiss clearly articulates an argument as to why the Court lacks jurisdiction to entertain Plaintiff's fourth cause of action as it pertains to the use of the word "Swiss." Defendant's motion to dismiss this part of Plaintiff's claim is denied without prejudice should the issue become clearer at a later time.

as it pertains to whether Defendant has a right to exclusive use of any mark containing the word "Swiss," and **GRANTED** as it pertains to whether Defendant may register a mark.

### III. CONCLUSION

For the reasons discussed above, Defendant's motion to dismiss is **DENIED in part** and **GRANTED in part**. Only Plaintiff's fourth cause of action is **DISMISSED** as it pertains to Defendant's right to register a mark.

**IT IS SO ORDERED.**

Dated: November 16, 2016

Barry Ted Moskowitz, Chief Judge
United States District Court